BONNER v CITY OF BRIGHTON

Docket No. 78-1208. Submitted May 9, 1979, at Lansing.—Decided
    August 6, 1979. Leave to appeal applied for.

Leon Bonner brought an action against the City of Brighton,
    Alan K. Stonex, Mayor of the City of Brighton, Bruce Romer,
    Brighton City Manager, and Clarence Schacht, Superintendent
    of the Sewer and Water Division, seeking the restoration of city
    water service to five rental homes owned by Bonner, and
    seeking damages for the discontinuance of services. The water
    services had been shut off by the city, at a time when the
    homes were vacant, in an effort by the city to enforce its
    building code regulations.

    The Livingston Circuit Court, Bert M. Hensick, J., entered a
    judgment for the defendants, finding that the action taken by
    the city was warranted by the situation and that the plaintiff
    was not entitled to damages. The plaintiff appeals, claiming
    that the trial court's findings that the city was justified in
    suspending water services in order to enforce building regula-
    tions was error and that the trial court erred in holding that
    the plaintiff failed to demonstrate any damages flowing from
    the city's action. *Held:*

    1. The city was unjustified in suspending the water service to
    the plaintiff's houses as a means of enforcing building regula-
    tions.

    2. The trial court was correct in not awarding damages. The
    plaintiff failed to sustain his burden of proof that the action by
    the city caused damages to the plaintiff.

    Affirmed as modified.

    D. C. RILEY, P.J., dissented. She would hold that, due to
    deficiencies in the lower court record on the issue of damages,
    it is impossible to determine the principles of law the trial
    court applied (and the facts to which they were applied) in

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 64 Am Jur 2d, Public Utilities §§ 62, 63.
[2] 64 Am Jur 2d, Public Utilities § 64.
[3] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*
    76 Am Jur 2d, Trial § 1257 *et seq.*

reaching its decision. She would remand for a correction of those deficiencies.

OPINION OF THE COURT

1. MUNICIPAL CORPORATIONS — PUBLIC UTILITIES — CHARGE FOR SERVICES — DISCONTINUANCE OF SERVICES — ENFORCEMENT OF COLLATERAL REGULATIONS — BUILDING CODE.

Payment of proper charges for public service supplied is a reasonable condition of the right to receive that service, and for nonpayment of such charges the service may be discontinued; however, service may not be cut off to enforce payment of a disputed claim or a claim for service rendered at some other place or to enforce a collateral regulation; therefore, a city may not discontinue its water service to certain properties in an attempt to force the owner of the properties to comply with the city's building code regulations.

2. MUNICIPAL CORPORATIONS — PUBLIC UTILITIES — PUBLIC WATER SERVICE — DISCONTINUANCE OF SERVICE — DAMAGES — BURDEN OF PROOF.

A plaintiff seeking damages from a city and city officials for the improper discontinuance of public water service by the defendants in order to compel the plaintiff to comply with the city's building code regulations has the burden of proving damages and this burden is not alleviated by the improprieties of the activities of the defendants.

DISSENT BY D. C. RILEY, P.J.

3. COURTS — TRIAL COURTS — FINDINGS OF FACT — APPEAL AND ERROR — COURT RULES.

*Findings of fact made by a trial court must include as many of the subsidiary facts as are necessary to disclose the steps by which the trial court reached its ultimate conclusion on each factual issue; the findings should be made at a level of specificity which will disclose to a reviewing court the choices made as between competing factual premises at the critical point that controls the ultimate conclusion of fact (GCR 1963, 517.1).*

*Carl J. Schoemer,* for plaintiff.

*John R. Brennan,* Attorney for City of Brighton (*Conlin, Conlin, McKenny & Meader,* by *Allen J. Philbrick,* of counsel), for defendant.

Before: D. C. RILEY, P.J., and V. J. BRENNAN and
G. W. CROCKETT, JR.,* JJ.

V. J. BRENNAN, J. Plaintiff is the owner of five
rental homes in the City of Brighton which com-
prise the subject matter of this lawsuit. At a time
when the homes were vacant, the water service
was shut off by the city in order to enforce its
building code regulations. This action was precipi-
tated by the belief that the homes were in viola-
tion of the building code and were thus uninhabi-
table.

Plaintiff then brought this suit in Livingston
County Circuit Court seeking restoration of the
water service and damages.[1]

After trial without a jury the lower court found
in pertinent part that:

"G. The action of the city of Brighton in suspending
the water services to the five properties in question was
warranted by the peculiar situation that existed.

"H. In failing to appeal to the Brighton Housing
Board of Appeals from the action of the City Manager
and City inspectors, the Plaintiff unreasonably failed to
exhaust his administrative remedy.

"I. The Plaintiff did not establish that such an appeal
would have been a useless gesture.

"J. The Plaintiff did not establish that a majority of
the seven members of the Housing Board of Appeals
would have been prejudiced.

\* \* \*

"M. The Plaintiff has not demonstrated that he was
legally damaged.

"N. The properties in question were not rented but

---

* Former Detroit Recorder's Court judge, sitting on the Court of
Appeals by assignment pursuant to Const 1963, art 6, § 23 as
amended in 1968.

[1] Plaintiff also assailed the constitutionality of the city's housing
regulations but does not appeal from the lower court's adverse ruling.

this was equally due to the inaction or action of the Plaintiff as well as to the suspension of the water service."

The lower court then issued the following orders:

"IT IS HEREBY ORDERED that the Plaintiff take nothing by his Complaint.

"IT IS FURTHER ORDERED AND ADJUDGED that the City of Brighton shall, upon request of the Plaintiff, resume water service to the five premises in question so that the Plaintiff may comply with all of the housing regulations of the City of Brighton.

"IT IS FURTHER ORDERED AND ADJUDGED that the Plaintiff shall not occupy any of the five properties in question until such time as there has been an inspection by the City of Brighton and compliance by the Plaintiff with all of the requirements of the Ordinances and regulations of the City of Brighton.

"IT IS FURTHER ORDERED AND ADJUDGED that if any of the five properties involved in this litigation are occupied prior to the inspection and compliance as required in the preceding paragraph, the City, without notice to the Plaintiff and without Order of the Court, may immediately suspend water services to said properties."

Plaintiff appeals by right raising three issues, only two of which warrant discussion here.

Plaintiff first claims that the trial court's finding that the city was justified in suspending water service in order to enforce building regulations was error. We agree.

The leading case on this subject is *Ten Broek v Miller,* 240 Mich 667; 216 NW 385 (1927), Anno: *Right of public utility corporation to refuse its service because of collateral matter not related to that service,* 55 ALR 771. In *Miller* plaintiff sought injunctive relief and damages against defendant

for the discontinuance of electric and water service which was predicated upon plaintiff's failure to install a septic tank. (Plaintiff had already installed a cesspool.) In ruling in favor of plaintiff the Court held:

"There is no claim that plaintiff refused to pay the rate charged for water and light, nor is there any claim that he did not pay in accordance with the rules, but defendants· now say the service was cut off because plaintiff would not install a septic tank when ordered to do so. The plaintiff denies that the resort company had any rule or regulation that septic tanks should be installed, and no such rule is shown in the evidence. But even if it did have such a rule, and it was not complied with by plaintiff, that would furnish no adequate reason for refusing to furnish him water and light.

"20 C.J. p. 333, in discussing this question, says:

" 'Payment of proper charges for service supplied is a reasonable condition of the right to receive it, and for nonpayment of such charges the service may be discontinued. *But service cannot be cut off to enforce payment of a disputed claim, or a claim for service rendered at some other place, or of a collateral liability not connected with the particular service.'*

"The installing of a septic tank was purely a collateral matter, and had no relation to the duty of defendant company to furnish the light and water and receive its pay therefor. See, also, *Phelan v Boone Gas Co,* 147 Iowa, 626 (125 NW 208 31 LRA [NS] 319). If plaintiff were violating a rule of the State health department he could be proceeded against for its infraction in the proper forum. This would be a more orderly way of disposing of the dispute than for defendant to substitute itself for a court and punish plaintiff by shutting off his water and light." 240 Mich 670-671.

In the present case the housing code violations are purely collateral to the discontinuance of the water service and thus *Miller* controls. In addition,

Chapter 60 of the Housing Regulations for the City of Brighton more than adequately provides for enforcement, thus collateral attack is unnecessary. Insofar as the lower court's ruling is contrary to the above, it is set aside.

Next the plaintiff claims that the trial court erred in holding that he failed to demonstrate any damages flowing from the city's action.

The plaintiff devotes much attention in his brief to the fact that Chapter 60 of the building regulations was not complied with and the water was shut off before any formal inspection. In addition only one house was inspected under GCR 1963, 310 after plaintiff commenced his suit, and two houses were never inspected. The plaintiff is thus endeavoring to point out improprieties in the city's activities. However these improprieties do not alleviate the plaintiff from his burden of proving damages.

In order to sustain this burden the plaintiff must show that due to the discontinuance of the water service, the premises in question were uninhabitable or could not have been repaired so as to be made inhabitable. Our review of the record indicates that the premises in question were replete with various code improprieties including falling plaster, defective steps, water seepage and exposed electrical wires. These conditions existed prior to the water service interruption and there was no showing that the city's action in any way affected the plaintiff's ability to repair the premises. In this light we cannot say that the lower court's ruling on damages was clearly erroneous. GCR 1963, 517.1.

The lower court's order is modified in accordance with this opinion.

G. W. CROCKETT, JR., J., concurred.

D. C. RILEY, P.J. *(dissenting)*. I am in accord with the majority opinion save its disposition of the issue of damages.

The trial court's pertinent findings of fact and conclusions of law, as required by GCR 1963, 517.1, are as follow:

"L. The proofs demonstrated that it was equally advantageous to the plaintiff to not rent the five properties as it was to rent them.

"M. The Plaintiff has not demonstrated that he was legally damaged.

"N. The properties in question were not rented but this was equally due to the inaction or action of the Plaintiff as well as to the suspension of the water service."

"The findings of fact must include as much of the subsidiary facts as is necessary to disclose the steps by which the trial court reached its ultimate conclusion on each factual issue. The findings should be made at a level of specificity which will disclose to the reviewing court the choices made as between competing factual premises at the critical point that controls the ultimate conclusion of fact. That is, at the point where a given choice as to the concrete facts leads inevitably to the ultimate conclusion, the findings should disclose the choice which was made, so that the appellate court may test the validity of its evidentiary support." 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 594.

See *Peters v Dep't of State Highways,* 400 Mich 50, 64; 252 NW2d 799 (1977), *Rockwell & Bond, Inc v Flying Dutchman, Inc,* 74 Mich App 1, 8; 253 NW2d 368 (1977), *People v Robert Jackson,* 63 Mich App 249, 253-254; 234 NW2d 471 (1975).

As is readily evident, the trial judge's conclusory statements were insufficiently detailed to permit meaningful appellate review. There were five sepa-

rate houses involved in the present suit. The circumstances surrounding the suspension of water service to each house were different. The evidence as to the condition of the houses was conflicting. Yet, the lower court lumped all the houses together in its findings. It may well be that plaintiff was damaged with respect to some houses and not others.

Because it is impossible from this record to determine the principles of law the trial court applied (and the facts to which they were applied) in reaching its decision, I would remand for a correction of these deficiencies.